# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07-cv-218

| | |
|---|---|
| BRENDA R. JACKSON and <br> LYNN C. BECKER, <br><br> Plaintiffs, <br><br> vs. <br><br> MECKLENBURG COUNTY, NORTH <br> CAROLINA, and SUSAN VILLESCAS, <br> JANET CAMERON, and LYNDA CAYAX, <br> Individually, <br><br> Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendants' Mecklenburg County, North Carolina ("County"), Susan Villescas ("Villescas"), Jane Cameron ("Cameron"), and Lynda Cayax ("Cayax") Motion To Dismiss Plaintiffs' Brenda R. Jackson ("Jackson) and Lynn C. Becker ("Becker") claims for breach of contract, defamation, violation of 42 U.S.C. § 1983, negligent supervision and retention, defamation, and tortious interference with contract for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, this Motion is **GRANTED**.

I.     FACTUAL BACKGROUND

The County hired Jackson on November 24, 2004 as Deputy Director of the Mecklenburg County Department of Social Services ("DSS"). As Deputy Director, Jackson was a member of

the DSS Senior Executive Team ("SET") and reported directly to DSS Director Richard Jacobsen ("Jacobsen").

In early 2005, Jacobsen suffered a stroke and took an extended medical leave. Jackson served as interim director until Jacobsen's return on August 8, 2005. Jackson resumed her duties as Deputy Director, but soon communicated grievances regarding Jacobsen's performance to several coworkers, including County Manager Harry L. Jones. These grievances alleged that Jacobsen was extremely forgetful, impulsive, inappropriately angry, that he exercised poor judgment, and was negatively affecting DSS operations. Jackson also alleged Jacobsen made inappropriate, implicitly racial jokes.

In November 2006, Mecklenburg County Administrative Services Director, Villescas, filed an internal grievance with Jacobsen accusing Jackson of discriminatory treatment and of generally undermining the DSS Director. Jacobsen requested an investigation of allegations against Jackson. Becker, administrative assistant to Jacobsen, was also questioned during the investigation. The investigation's report concluded that Jackson engaged in violations of County policy, created a schism in the uppermost levels of management at DSS, and undermined Jacobsen's authority as Director. The report stated that Jackson and Becker enjoyed "free reign" during the director's absence and expected promotions. Ganzlmar advised Jacobsen that "like any CEO, [Jacobsen] is entitled to the undivided loyalty of his senior executive staff" and recommended termination of Jackson and Becker.

The County offered a cash payment to Jackson on March 30, 2007 in exchange for her resignation and release of future claims against the County and its employees. Jackson entered into a "Resignation & Transition Agreement" ("Agreement") with the County on April 5, 2007.

(Doc. No. 6, Ex. A). This Agreement required the County to "pay [e]mployee [Jackson] $25,000" and "provide neutral comments to third parties and/or prospective employers about [e]mployee and her Mecklenburg County Service" in exchange for Jackson's agreement to "release[], waive, and forever discharge[] Mecklenburg County . . . and employees . . . from any and all actions, suits, demands, damages, claims. . . ." *Id.* at 2, 3.

Eight days after Jackson's resignation, Becker submitted an email resignation to Jacobsen, nineteen other DSS employees, and the Board of County Commissioners. Becker's resignation email accused County employee Cameron of "making racist . . . remarks" and accused Cameron and Villescas of openly "celebrating Brenda Jackson's resignation." Becker also referenced a November memo from Cameron to Jacobsen that allegedly accused Becker of "dishonesty" and of having a "poor attitude towards team building." County Commissioner Bill James ("James") replied to Becker's resignation with an email to the entire County and members of the local media requesting more information regarding Becker's resignation. James stated that he wanted the Board to be "informed of such details" when a long-time DSS staffer accuses supervisors of racism.

Jackson now brings various breach of contract and tort claims against the County, alleging first that her contractual release barring such claims is null and void due to the County's own breach of the agreement. Jackson alleges James's emails violated the County's non-disparagement obligations, under ¶ 4 of the release, and that her obligation to release the County and its employees from claims is therefore null and void.

Becker brings suit under 42 U.S.C § 1983 and alleges she was discharged in retaliation for protected speech made during the County race discrimination investigation. She also alleges

3

that County Manager Jones's emails defamed her and that the County was negligent in its supervision, retention, and investigation of DSS employees. Becker also brings claims against individual Defendants Villescas, Cameron, and Cayax, alleging these individuals made defamatory statements to the County in an effort to induce the County to terminate her employment.

## II. DISCUSSION

The Court will analyze each Plaintiff's claims individually.

### A. Standard of Review

"The federal rules apply to civil actions removed to the United States district courts . . . and govern procedure after removal." Fed. R. Civ. P. 81(c). North Carolina substantive law applies to the elements of Plaintiffs' state law claims but the Federal Rules of Civil Procedure govern procedural law and North Carolina "pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." *Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003) (citations omitted); *See Bartlett v. Frederick County,* (4th Cir. 2007) (applying the Fed. R. Civ. P. 9 pleading standard to a removed state court complaint).

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss for failure to state a claim upon which relief may be granted should be allowed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture*

*Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D. C. Cir.1995). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D. C. Cir.1994). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S.Ct. at 1965.

**B.     Plaintiff Jackson's Claims Against the County and Individual Defendants**

    1.     <u>Breach of Contract Claim</u>

Jackson's breach of contract claim fails to allege facts that support a plausible inference of breach of contract by the County. To establish a breach of contract under North Carolina law, a plaintiff must show: "(1) the existence of a valid contract and (2) breach of the terms of [the] contract." *Phelps-Dickerson Builders, LLC v. American Partners,* 172 N.C. App. 427, 436 (2005) *(quoting Poor v. Hill,* 138 N.C. App. 19, 26 (2000)). Although Jackson proves the existence of a valid contract, she fails to demonstrate the breach of that contract.

    *i.     Existence of a Valid Contract*

A valid contract requires an agreement based upon a meeting of the minds and sufficient consideration. *Creech v. Melnick*, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001). Jackson meets her burden to allege the existence of a valid contract. The Agreement, referenced in the complaint and attached to the Defendant's Brief in Support of Motion to Dismiss (Doc. No. 6, Ex. A), was signed by both parties on April 5, 2007 and was supported by consideration.

5

ii. *Breach of the Terms of the Contract*

Jackson specifically alleges that the County violated the "Neutral References and Nondisparagement" provision of the Agreement by publishing non-neutral statements to members of the local media. The "Neutral References and Nondisparagement" provision of the Agreement states that

> Employer agrees to provide neutral comments and references to third parties and/or prospective employers about Employee and her Mecklenburg County service, as long as Employee complies with the Terms of this Agreement. Employer agrees to provide prospective employers a statement that, pursuant to County Policy, only the following information about Employee's Mecklenburg County employment can be disclosed: her dates of service, final position title, compensation history, all positions held (including Acting DSS Director), and performance evaluations. Employer also agrees to make only the following statement about Employee's separation: "Ms. Jackson resigned her position with the Mecklenburg County Department of Social Services on April 5, 2007 to attend to family matters and then to pursue other career opportunities." The Parties acknowledge that Employer will have to comply with any court order compelling disclosure of information in Employee's Personnel File or Mecklenburg County work history. In the event of litigation or administrative appeal or challenge by or on behalf of Employee against Employer, the provisions of this paragraph 4 are no longer applicable to or binding upon Employer. Employee agrees not to make disparaging comments to any third parties regarding Mecklenburg County, the Mecklenburg County Department of Social Services, Richard W. Jacobsen, Jr., or any other officer or employee of either. The Parties acknowledge and agree that this provision is essential to this agreement and that breach of this provision by either party relieves the other party of any obligation to comply with this paragraph 4.

(Doc. No. 6, Ex. A at 2).

Jackson alleges that emails sent to members of the local media, specifically James's email regarding Jackson's resignation, did "not contain neutral comments or even the scripted comments concerning her separation from employment . . . as required by the [Agreement]" and therefore breached ¶ 4 of the Agreement. In his email, that James wrote that his request for information was appropriate because he did not believe "it is inappropriate for the Board to be

6

informed . . . when a long time DSS staffer accuses supervisors of racism and other activity not becoming of County employees." These facts, even when viewed in the light most favorable to Jackson, do not refer to Jackson specifically, and therefore, do not meet the standard of a claim for breach of the "Neutral References and Nondisparagement" provision of the Agreement.

2. 42 U.S.C. § 1983, Negligent Supervision and Retention, Defamation, and Tortious Interference with Contract

Jackson's claims for deprivation of constitutional rights under 42 U.S.C. § 1983, negligent supervision and retention, and defamation against the County are barred by her release of claims against the County and its employees in the Agreement. "A release is an agreement to relinquish a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." *VF Jeanswear Limited Partnership v. Molina*, 320 F. Supp. 2d 412, 418 (M.D.N.C. 2004). "When a release is executed in exchange for valuable consideration, the release provides a complete defense to an action for damages." *Id.* at 419 (citing *Talton v. Mac Tools, Inc.*, 118 N.C. App. 87, 90 (1995). A party may seek to declare a contractual release null and void, and thereby rescind or cancel their obligations under the release, although this "right to rescind does not exist where the breach is not substantial and material and does not go to the heart of the agreement." *Fletcher v. Fletcher,* 123 N.C. App. 744, 751 (1996) *(citing Wilson v. Wilson,* 241 N.C. 40, 43 (1964)). Rescission of a contract is an equitable remedy and a plaintiff seeking rescission of his or her obligations "must return or offer to return whatever he may have received from the defendant." *York v. Cole*, 254 N.C. 224, 225 (1961); *Accord Melton v. Family First Mortg. Corp.,* 156 N.C. App. 129, 136, 576 S.E.2d 365, 371 (2003) (citing *Opsahl v. Pinehurst Inc.,* 81

7

N.C. App. 56, 65 (1986)) ("[a]s a general rule, a party is not allowed to rescind where he is not in a position to put the other in status quo by restoring the consideration passed.")

Jackson executed the release of claims on April 5, 2007 in exchange for extended medical benefits, a mutual non-disparagement and neutral reference obligation, and the County's one-time payment of $25,000 to her. This consideration was conferred upon Jackson in exchange for her obligation to "release[], waive, and forever discharge[] Mecklenburg County . . . and employees . . . from any and all actions, suits, demands, damages, claims . . . ." (Doc. No. 6, Ex. A at 2, 3). Despite arguing that the Agreement is null and void, Jackson does not offer to return the consideration. Jackson may not unilaterally retain the consideration and simultaneously attempt to rescind her corresponding obligations under the Agreement. Allowing Jackson to proceed without pleading facts that support the return of the consideration of the bargain would create an inequitable result. Jackson is limited to contractual damages for the County's alleged breach of contract. Her remaining claims are precluded by her remaining obligations under the Agreement not to sue the County and its employees.

**C.    Plaintiff Becker's Claims Against the County and Individual Defendants**

    1.    <u>Slander and/or Defamation Per Se Against the County</u>

A claim for defamation entails a false and defamatory statement, of or concerning plaintiff, which was published to a third person and caused injury to plaintiff's reputation. *See Smith-Price v. Charter Behavioral Health Sys.,* 164 N.C. App. 349 (2004). Becker alleges that County Manager Harry Jones's statement that "sometimes what can happen and what does happen . . . there are some people where we've experienced instances where false claims are made by

8

employees to redirect the focus away from their own inappropriate behavior, " constitutes slander and/or defamation per se.

### i. *Defamation Per Se*

Becker fails to state a claim for defamation per se. Although Becker correctly recognizes there is no heightened pleading standard for defamation claims under the federal rules, the complaint still must set forth facts that raise the complainant's right to relief under the elements of a state law defamation per se claim beyond a merely speculative level. "A publication is . . . actionable per se, if, when considered alone without innuendo, (1) [i]t charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt or disgrace, or (4) it tends to impeach one in his trade or profession." *Ellis v. Northern Star Co.*, 326 N.C. 219 (1990) (citing *Flake v. News Co.*, 212 N.C. 780, 787 (1938)). "Under North Carolina law, slander per se is an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Losing v. Food Lion, LLC*, 648 S.E.2d 261, 263 (N.C. Ct. App. 2007) (citations omitted). "When pleading a defamation claim, the allegedly defamatory statement made or published by the defendant does not have to be set out verbatim in the plaintiff's complaint if alleged 'substantially in haec verba or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" *Esancy v. Quinn*, WL 322607 at 4 (W.D.N.C. 2006) (unpublished opinion) (quoting *Stutts v. Duke Power Co.,* 47 N.C. App. 76, 83-4 (1980)). To be actionable per se, "[d]efamatory words . . . must be susceptible of but one meaning and of such nature that the court can presume as a matter of law

9

that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned or avoided." *Renwick v. News And Observer Pub. Co.,* 310 N.C. 312, 317-18 (1984) (citations omitted). "In determining whether the [publication] is libelous per se [it] must be construed stripped of all insinuations, innuendo, colloquium and explanatory circumstances." *Id.* at 318. The North Carolina Supreme Court stated that "the initial question . . . in reviewing a claim for libel per se is whether the publication is such to be subject to only one interpretation" and that it is then "for the court to say whether that [interpretation] is defamatory." *Id.* at 319.

Becker's complaint fails to state a claim under the North Carolina defamation per se standard. Manager Harry Jones's statement is an insinuation that could refer to Becker, but if stripped of all insinuations and explanatory circumstances, as is required by North Carolina defamation law, this statement does not mention Becker by name and is susceptible to two different interpretations: 1) that it is a direct reference to Becker or 2) that it is a more general statement about situations where employees have made false claims to redirect the focus away from their own inappropriate behavior. Becker's complaint does not allege any other type of libel claim, nor does it allege that the defamatory statement is subject to more than one interpretation. This Court cannot presume that the statement is subject to one defamatory interpretation. Accordingly, Becker's defamation per se claim fails as a matter of law.

    ii. *Slander per se*

Slander per se is a false statement which is orally communicated to a third party and amounts to: 1) an accusation that the plaintiff committed a crime involving moral turpitude; 2) an allegation that impeaches the plaintiff in his trade, business, or profession; or 3) an imputation that

the plaintiff has a loathsome disease. *Barker v. Kimberly-Clark Corp.*, 524 S.E.2d 821 (N.C. Ct. App. 2000). Becker alleges that County Manager Jones' written statement issued to the media which read "sometimes what can happen and what does happen. . . there are some people where we've experienced instances where false claims are made by employees to redirect the focus away from their own inappropriate behavior" constitutes slander per se.

Becker fails to state a claim for slander per se for two principal reasons. First, Becker does not allege the statement was orally communicated to a third party - the statement was a written one issued to the media. Second, as the statement does not specifically mention Becker, it similarly fails to meet the standard.

    2.    <u>Slander and/or Defamation Per Se Against Individual Defendants</u>

        i.    *Defendants Villescas & Cayax*

Becker fails to state a claim for defamation against Villescas and Cayax because the complaint does not set forth published statements in haec verba made by either Defendant that mention or refer to Becker. Becker conclusively states that "allegations made by Villescas, Cameron, and Cayax to Defendant County's DSS Director and to its Human Resources Director regarding Plaintiff's supposed disloyalty and/or violations of County policy" constitutes slander and/or defamation per se. Becker's complaint does not set forth the substance of the alleged statements in haec verba beyond that they generally involved "disloyalty" and "violations of County policy." Becker's claim for individual slander and/or defamation per se against Defendants Villescas and Cayax fails as a matter of law.

ii. *Defendant Cameron*

Becker fails to state a claim for slander or libel per se against Cameron. Becker's complaint includes mention of two statements made by Cameron that Becker alleges constitute libel. The first is an email written by Becker that states, "[Defendant Cameron] is free to continue making racist, inflammatory, hateful personal remarks." The second is another email sent by Becker that reads, "Janet Cameron, who in a November memo to you accused me [Plaintiff Becker] of dishonesty and having a poor attitude toward team building . . . ."

Neither of these statements meet the standard of defamatory. Becker's first email allegation does not set forth an allegedly defamatory statement in haec verba. It is a conclusive allegation that Cameron generally makes "racist, inflammatory, and hateful personal remarks," and is insufficient to support a claim for defamation. Becker's second email allegation also fails to set forth an actionable claim. "North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff 'dishonest' or charging that plaintiff was an unfaithful and an unreliable employee, are not actionable per se." *Stutts v. Duke Power Co.*, 266 S.E.2d 861, 865 (N.C. Ct. App. 1980). Further, if a statement "cannot be reasonably interpreted as stating 'actual facts' about an individual, it cannot be the subject of a defamation suit." *Daniels v. Metro Magazine Holding Co.*, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006). Cameron's alleged accusation that Becker is dishonest and possesses a poor attitude towards team-building is a statement of opinion and is too vague to be reasonably interpreted as stating "actual facts" about Becker.

Accordingly, Becker's claims for defamation against individual defendants Villescas, Cayax and Cameron fail as a matter of law.

3. <u>42 U.S.C. § 1983 Constitutional Rights Violation</u>

Becker fails to state a claim for deprivation of constitutional rights under § 1983. To state a claim under § 1983, a plaintiff must establish: 1) that the defendant "deprived [Becker] of a right secured by the Constitution or laws of the United States" and 2) "that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Becker argues she was terminated in retaliation for constitutionally protected speech, including: 1) her expression of concerns regarding Jacobsen, made in response to questions asked during a County employee investigation, and 2) her written statement to Jacobsen criticizing the County's race discrimination investigation.

A plaintiff seeking to recover for First Amendment retaliation must establish three elements: "[F]irst, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern. Second, the employee's interest in the expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action." *Smith v. Frye*, 488 F.3d 263, 267 (4th Cir. 2007) (citation omitted). The first two factors involve questions of law, while the third factor involves an issue of fact. *See Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 352 (4th Cir. 2000).

Becker fails to allege facts that bring her claim outside that of an employee speaking pursuant to official duties. In *Garcetti v. Ceballos,* 547 U.S. 410, 126 S. Ct. 1951 (2006), the Supreme Court addressed the threshold legal requirement for a violation of First Amendment right to free speech that a plaintiff speak as an individual on a matter of public concern, not as a public employee regarding employee duties. "When public employees make statements pursuant to their

13

official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

Becker's § 1983 claim fails because her expression was made pursuant to her official duties as a County employee. Becker's first series of statements regarding Jacobsen were made in direct response to County human resources personnel conducting an official race discrimination investigation. Every County employee had a duty to cooperate and respond to questions solicited during the official investigation. Becker's statements were not made as an individual citizen speaking on a matter of public concern, but as a response to an official investigation. Additionally, Becker's written memo to Jacobsen criticizing the County human resources investigation fails under the second legal threshold requiring Becker's interest in the expression to outweigh the County's interest in providing effective public services. There is a compelling interest to the community for the DSS to promptly and accurately investigate claims of racial discrimination, in order to provide effective public services. The County is legally obligated to promptly and efficiently resolve claims of racial discrimination in the public workplace by a wealth of regulatory law. Becker's interest in her statement, that the investigation was a "witch hunt," does not outweigh the County's interest in providing effective public services. Becker's second allegation of protected expression therefore fails as a matter of law.

  4. <u>Tortious Interference with Contract</u>

"The elements of tortious interference are: (1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff." *United Labs., Inc. v.*

*Kuykendall*, 322 N.C. 643, 661 (1988). "A plaintiff may maintain a claim for tortious interference with contract even if the employment contract is terminable at will." *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 745 (2007) (citations omitted). "As a general rule, non-outsiders [to the contract] often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee," although "[t]he qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Bloch v. The Paul Revere Life Ins. Co.,* 143 N.C. App. 228, 240 (2001) (citations omitted). Defendants argue that Becker fails to allege sufficient facts to support the second and third elements of her claim.

        i.       *Defendants Villescas and Cayax*

Becker fails to allege facts constituting "acts" committed by Villescas or Cayax. Becker relies on the allegation that "upon information and belief, Defendants Villescas, Cameron, and Cayax intentionally induced Defendant County to terminate its employment relationship with Becker by deliberately making false statements against her regarding her conduct." The complaint does not allege facts identifying the content, time, or actual occurrence of false statements and fails to put Villescas and Cayax on notice of the basis of Becker's claim. This failure to plead facts instead of conclusory allegations makes Becker's claim of tortious interference with contract against Villescas and Cayax merely speculative, and it fails as a matter of law.

        ii.      *Defendant Cameron*

Becker likewise fails to state a claim for tortious interference with contract against Cameron. To establish a claim for tortious interference, it is not enough that a plaintiff plead a defendant has taken some action which has led to the termination of her employment. A plaintiff

15

must affirmatively allege that the defendant's intent was to bring about the termination. *See White v. Cross Sales & Engineering Co.*, 629 S.E.2d 898 (N.C. Ct. App. 2006). The November memo written by Defendant Cameron allegedly accused Becker of "dishonesty" and of having a "poor attitude towards team building." Becker fails to offer any evidence that Cameron wrote the memo with the intent to bring about Becker's termination. With regard to the fourth element of tortious interference, in alleging that the statement was made "without justification" on the ground that Cameron deliberately made false statements, as analyzed above, Cameron's memo represented a statement of opinion and is therefore not capable of being judged for accuracy in terms of being true or false.

Accordingly, Becker fails to state a claim for tortious interference with contract against any individual defendant.

5. Negligent Supervision and Retention

Becker fails to state a claim for negligent supervision and retention against the County. To state a claim for negligent supervision and retention, Plaintiff Becker must sufficiently allege: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat. Bank,* 202 F.3d 234, 250 (4th Cir. 2000) (citing *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483 (1986)).

Even if this Court agreed with Becker's claim that defamation per se against Cameron constitutes an allegedly tortious act committed by a County employee, Becker fails to allege that the County knew or had reason to know of Cameron's incompetency prior to this tortious act. Although the complaint generally alleges the County had "reason to know the allegations" that

Cameron's allegations were false, this only addresses the County's knowledge of incompetency regarding the actual tortious act; and does not address the threshold requirement that the County knew or had reason to know of the employee's incompetency prior to the tortious act. Absent any allegation by Becker that the County knew or had reason to know of Cameron's incompetency prior to the allegedly tortious act (Defendant Cameron's November memo), Becker fails to state a claim for negligent supervision and retention.

**D.     Plaintiffs' Alternative Motion for Leave to Amend Complaint**

Jackson and Becker alternatively state that "should this Court find the complaint to be insufficiently pled in any respect, Plaintiffs request leave of court to amend their complaint." The Federal Rules of Civil Procedure allow Plaintiffs "to amend [their] pleading once as a matter of course . . . before being served with a responsive pleading . . . ." Fed. R. Civ. P. 15(a).

Jackson and Becker were free to amend their complaint at any time before the County filed its Motion to Dismiss and had not yet served a responsive pleading. *See Smith v. Blackledge*, 451 F.2d 1201, 1203 n.2 (4th Cir. 1971) (holding that a motion to dismiss is not a responsive pleading for purposes of Rule 15(a)). Granting leave of Court to amend Plaintiffs' complaint when the Rules do not require such leave and when such a request is expressly conditioned on this Court's evaluation of particular deficiencies in the complaint, constitutes an impermissible advisory opinion and Plaintiffs' conditional motion for leave is denied.

**IT IS THEREFORE ORDERED** that the County's Motion To Dismiss with regard to all causes of action against both the County and individual defendants is hereby **GRANTED**.

Signed: July 30, 2008

*[Signature]*

Graham C. Mullen
United States District Judge